UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DESERET RANCHES OF NORTH
FLORIDA, LLC, a Delaware limited
liability company,

        Plaintiff,

                                Case No. _____

vs.

THE ST. JOE COMPANY, a Florida
corporation,

        Defendant.

_____/

## **COMPLAINT FOR DECLARATORY JUDGMENT**

The Plaintiff, Deseret Ranches of North Florida, LLC ("DRNF"), sues the

Defendant, The St. Joe Company ("St. Joe"), and alleges as follows:

1.    This is an action for declaratory judgment pursuant to the Federal

Declaratory Judgment Act, 28 U.S.C. § 2201, and/or the Florida declaratory

judgment statute, Chapter 86, Florida Statutes, involving a controversy concerning

real property rights with a value in excess of $75,000.00, exclusive of interest and

costs.

2.    Plaintiff DRNF is a Delaware limited liability company and duly

authorized to conduct business in the State of Florida. Plaintiff DRNF's sole member

is Farmland Reserve, Inc., a Utah nonprofit corporation, with its principal place of business also in Utah.

3.      Defendant St. Joe is a Florida corporation with its principal place of business in WaterSound, Florida. This Court also has personal jurisdiction over St. Joe pursuant to Section 10(d) of the Restrictive Covenant identified below.

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C § 1332.

5.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant St. Joe resides in the Northern District of Florida, the real property at issue is located in the Northern District of Florida, and the parties agreed to the jurisdiction and venue of this Court in Section 10(d) of the Restrictive Covenant identified below.

6.      On or about November 6, 2013, an affiliate company of the Plaintiff DRNF, AgReserves, Inc. ("AgReserves"), entered into a Purchase and Sale Agreement (the "Purchase Agreement") with the Defendant St. Joe whereby AgReserves agreed to purchase from Defendant St. Joe hundreds of thousands of acres of real property located in nine (9) Florida counties and more particularly depicted on Schedule A-1 to the Purchase Agreement (the "Timberlands").

7.      A portion of the Timberlands to be acquired from Defendant St. Joe was located in Bay County, Florida, and is more particularly described on the special warranty deeds, attached hereto as **Exhibit A** (the "Property").

2

8.     Pursuant to the Purchase Agreement, AgReserves and its successors in interest had unlimited rights to use the Property except as restricted by Section 7.5 of the Purchase Agreement, which provided a limited Post-Closing Use Restriction as follows:

> For a period of fifteen (15) years following the Closing, Purchaser, on behalf of itself and its successors and assigns, covenants and agrees that no development activity of any type, including, without limitation, any temporary or permanent improvement, clearing of development sites or other preparation for development, **in each case related to or for the purpose of residential, commercial, retail, hotel, resort or industrial development, can be undertaken on all or any portion of the Core Timberlands**, and that Purchaser and its successors and assigns shall not apply to any Governmental Authority for permission or approval to do any of the foregoing (provided, however, that this Section 7.5 shall not prohibit Purchaser or its successors or assigns from developing the Core Timberlands or constructing temporary or permanent improvements (or having a third party develop or construct improvements) in connection with forestry operations, the preservation of conservation lands and/or cattle and livestock operations on the Core Timberlands, or constructing residential improvements on the Core Timberlands for its employees engaged in forestry and/or cattle and livestock operations (but the same shall not be leased, sold or otherwise transferred to any third party)).

(Emphasis Added).

9.     At the time that AgReserves and Defendant St. Joe entered into the Purchase Agreement, Defendant St. Joe's core business was developing, managing, leasing, and selling other real property which it owned for retail centers, residential and resort communities, and mixed-use and industrial projects. At the time AgReserves and Defendant St. Joe entered into the Purchase Agreement, the

3

Timberlands and the Property consisted of agricultural and silvicultural lands, which included various uses, such as communications tower leases, dirt pits, hunting leases, palmetto berry sales, and bee leases, among others, that did not directly compete with Defendant St. Joe's core business.

10.     In order to protect the Defendant St. Joe's core business of developing, managing, leasing, and selling retail centers, residential and resort communities, and mixed-use and industrial projects, the Purchase Agreement identified certain portions of the Timberlands as "Core Timberlands," and included in Section 7.5 a Post-Closing Use Restriction which had as its intended purpose to restrict AgReserves, and its successors in interest, from developing these Core Timberlands in a manner that directly competed with Defendant St. Joe's core business. The Core Timberlands included the Property.

11.     On or about March 4, 2014, AgReserves, pursuant to its rights under the Purchase Agreement, designated that Defendant St. Joe transfer title to the Property directly to Plaintiff DRNF. In conjunction with Plaintiff DRNF's obtaining title to the Property, Plaintiff DRNF and Defendant St. Joe entered into a Restrictive Covenant Agreement (the "Restrictive Covenant") with respect to the Property, a true copy of which is attached hereto as **Exhibit B**. Similar Restrictive Covenant Agreements were also entered into by Plaintiff DRNF and Defendant St. Joe for

4852-4816-2235.13

Core Timberlands located in Gulf County, Calhoun County, and Franklin County, Florida.

12.    The parties' intent in entering into the Restrictive Covenant was to confirm the continued applicability of the Post-Closing Use Restriction with respect to the Property. Thus, the limited use restriction was stated in Section 1 of the Restrictive Covenant as follows:

> Grantor covenants and agrees, for the benefit of Grantee, that at all times until the Termination Date, no development activity of any type, including, without limitation, any temporary or permanent improvement, clearing of development sites or other preparation for development, **in each case related to or for the purpose of residential, commercial, retail, hotel, resort or industrial development, can be undertaken on all or any portion of the Property** (the "Prohibited Uses") and the Grantor (and its successors and assigns) shall not apply to any Governmental Authority (as defined in the Purchase Agreement) for permission or approval of a Prohibited Use; provided, however, that nothing in this Agreement shall prohibit Grantor (or its successors or assigns) from developing the Property or constructing temporary or permanent improvements (or having a third party develop or construct improvements) in connection with forestry operations, the creation or preservation of conservation lands and/or cattle and livestock operations on the Property or on the other Core Timberlands (as defined in the Purchase Agreement) owned by Grantor or any Affiliate (as defined in the Purchase Agreement) of Grantor, its successors and assigns. For the avoidance of any doubt Grantor shall be permitted to construct residential improvements on the Property for its employees engaged in forestry and/or cattle and livestock operations (but the same shall not be leased, sold or otherwise transferred to any third party).

(Emphasis added).

13.     At the time the parties entered into the Restrictive Covenant, Defendant St. Joe's core business remained the developing, managing, leasing, and sales of retail centers, residential and resort communities, and mixed-use and industrial projects, the Property remained as agricultural and silvicultural lands, and the purpose of the Restrictive Covenant was to restrict Plaintiff DRNF, and its successors in interest, from developing the Core Timberlands and Property in a manner that directly competed with Defendant St. Joe's core business.

14.     At the time the Purchase Agreement and Restrictive Covenant were entered into by the parties, the Property was (and remains today) zoned by Bay County, Florida, as CSVH Conservation Habitation Zone. Pursuant to Section 7.05 of Chapter 7 of the Bay County Land Development Regulations, this zoning classification identified as allowed uses, among others, agricultural and silvicultural uses (including as identified in Chapter 9 of the Bay County Land Development Regulations), communication towers, public utilities, and similar uses compatible with conservation of natural resources.

15.     Further, Chapter 9 of the Bay County Land Development Regulations identified permitted uses for property zoned agricultural, and identified among its permitted uses: public utilities including electric transmission lines and related facilities, water and/or sewer transmission lines, lift stations, and related facilities, natural gas or petroleum transmission lines, and other similar public utility uses;

6

communication towers; wind and solar energy farms (the latter identified in the zoning code as "photo-voltaic arrays"); and self-contained temporary industrial uses such as portable asphalt plants, pipe storage areas, or equipment storage areas for a specified time period.

16.    Also at the time the Purchase Agreement and Restrictive Covenant were entered into by the parties, the installation of communication towers and solar energy farms were generally considered consistent with the evolving use of agricultural and silvicultural lands.

17.    Consistent with the parties' intent and the purpose of the Post-Closing Use Restriction and the Restrictive Covenant, in August 2017, the Plaintiff DRNF requested that Defendant St. Joe provide written confirmation that the installation of a communications tower on the Property was not a violation of the restrictions, and on August 28, 2017 the Defendant St. Joe provided this written confirmation by letter. A true copy of this letter is attached hereto as **Exhibit C**.

18.    On March 31, 2020, Plaintiff DRNF similarly informed Defendant St. Joe by letter that Plaintiff DRNF had entered into options to lease portions of the Property for installation of solar energy farms, and requested that Defendant St. Joe confirm that such use did not violate the restrictions in Section 7.5 of the Purchase Agreement and the Restrictive Covenant, like it had done with the communication

towers. A true copy of Plaintiff DRNF's March 31, 2020 letter is attached hereto as **Exhibit D**.

19.    In a letter dated April 21, 2020, however, Defendant St. Joe denied DRNF's request and wrongfully stated that installing the solar energy farms on the Property would violate Section 1 of the Restrictive Covenant. A true copy of Defendant St. Joe's April 21, 2020 letter is attached hereto as **Exhibit E**.

20.    As demonstrated by Plaintiff DRNF's March 31, 2020 letter request and Defendant St. Joe's April 21, 2020 letter response, the parties disagree whether the Purchase Agreement and the Restrictive Covenant restrict the installation and operation of solar energy farms on the Property.

21.    While Section 7.5 of the Purchase Agreement and the Restrictive Covenant do not expressly address the installation of solar energy farms (or communication towers), the installation of solar energy farms (like communication towers) on the Property is not restricted, nor was it intended by the parties to be restricted when they executed the agreements because such activity does not directly compete with Defendant St. Joe's core business.

22.    The installation of solar energy farms (like communications towers) does not constitute "development activity . . . related to or for the purpose of residential, commercial, retail, hotel, resort or industrial development" that is restricted by Section 7.5 of the Purchase Agreement and the Restrictive Covenant to

8

prevent direct competition to Defendant St. Joe's core business on the Core Timberlands. Further, such restrictive covenants are to be strictly and narrowly construed.

23.     Moreover, both the Purchase Agreement and the Restrictive Covenant except from the restrictions on the Property "developing the Property or constructing temporary or permanent improvements (or having a third party develop or construct improvements) in connection with forestry operations, the creation or preservation of conservation lands and/or cattle and livestock operations on the Property." The installation of solar energy farms (like communications towers) is consistent with development of the Property in connection with Plaintiff DRNF's evolving agricultural and silvicultural operations, as solar energy farms are typically developed around the country on property that is part of agricultural and silvicultural operations, and not on commercial properties.

24.     In addition, the installation of solar energy farms (like communication towers) is consistent with the agricultural and silvicultural use of the Property under Bay County's applicable Zoning and Land Development Regulations that were in existence at the time the Purchase Agreement and Restrictive Covenant were executed, as well as currently, which specifically identify solar energy farms (identified as photo-voltaic arrays) and public utility uses as among the many allowed agricultural uses for the Property as zoned.

25.     Plaintiff has entered into options to lease portions of the Property for installation of solar energy farms, which options are contingent upon Plaintiff's right to do so under Section 7.5 of the Purchase Agreement and Restrictive Covenant.

26.     Thus, there is a bona fide, actual, present, and practical need for this Court to render declaratory judgment as to whether Plaintiff DRNF can allow the installation and operation of solar energy farms on the Property under the Purchase Agreement and the Restrictive Covenant.

27.     The Purchase Agreement, the Restrictive Covenant, options to lease portions of the Property for installation of solar energy farms, and the letters between the parties provide a present ascertained or ascertainable state of facts, or a present controversy about a state of facts.

28.     This Court's interpretation of the Purchase Agreement and the Restrictive Covenant will determine the rights and obligations of the parties. Therefore, a power, privilege, immunity, or right of the party seeking relief is dependent on the facts or the law applicable to the facts.

29.     As indicated in its April 21, 2020, letter, Defendant St. Joe is actually and presently adverse and antagonistic to Plaintiff DRNF's interpretation of the Purchase Agreement and the Restrictive Covenant and Plaintiff DRNF's plans to allow the installation and operation of solar energy farms on the Property. Therefore,

Defendant St. Joe has an actual, present, adverse, and antagonistic interest in the subject matter, either in fact or law.

30.     The antagonistic and adverse interests are all before the Court by proper process because all of the interested parties are the named parties to this lawsuit.

31.     Declaratory judgment will resolve the parties' disagreement and either allow or disallow Plaintiff DRNF to proceed with its options to lease portions of the Property for installation of solar energy farms, and therefore would not be merely giving legal advice.

32.     The Plaintiff DRNF has been required to retain the undersigned attorneys to bring this action, and is obligated to pay said attorneys the fees and costs incurred for their services. Pursuant to Section 12.14 of the Purchase Agreement and Section 3(b) of the Restrictive Covenant, Plaintiff DRNF is entitled to recovery of these attorney's fees and costs from Defendant St. Joe if Plaintiff DRNF prevails in this action.

WHEREFORE, Plaintiff Deseret Ranches of North Florida, LLC respectfully requests that this Court enter judgment in its favor and against Defendant The St. Joe Company:

(1) declaring that the installation and operation of commercial solar energy farms and related solar and transmission equipment on the Property and Core Timberlands by Plaintiff DRNF (or its successors in interests, agents or lessees) is

11

not prohibited or restricted under Section 7.5 of the Purchase Agreement and the

Restrictive Covenant;

(2) awarding a judgment in favor of Plaintiff DRNF and against Defendant

St. Joe for the attorney's fees and costs Plaintiff DRNF incurs in this action; and

(3) ordering such other and further relief as this Court deems necessary and

appropriate.


Dated: May 19, 2020.

*/s/ John A. Tucker* _____

John A. Tucker
Florida Bar No. 0356123
Primary E-mail: jtucker@foley.com
Secondary E-mail:
avwilliams@foley.com
Foley & Lardner LLP
One Independent Drive, Suite 1300
Jacksonville, FL 32202-5017
Telephone:  904-359-2000
Facsimile:  904-359-8700

Nicholas J.P. Meros
Florida Bar No. 0120270
Primary E-mail: nmeros@foley.com
Secondary E-mail: bhurn@foley.com
Foley & Lardner LLP
106 E College Avenue, Suite 900
Tallahassee, FL 32201
Telephone: 850-222-6100
Facsimile: 850-561-6475

*Attorneys for Plaintiff Deseret Ranches
of North Florida, LLC*

4852-4816-2235.13